282 So.2d 700

**In re Thearon SHIPMAN et al.**

**v.**

**STATE of Alabama.**

**Ex parte STATE of Alabama ex rel. ATTORNEY GENERAL.**

**SC 371.**

Supreme Court of Alabama.

Aug. 30, 1973.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State, petitioner.

No brief for the defendant.

BLOODWORTH, Justice.

The petition of the State of Alabama for a writ of certiorari to review the decision of the Court of Criminal Appeals in Shipman v. State, 51 Ala.App. 80, 282 So.2d 696, reversing defendant Shipman's conviction for possession of narcotics because of an illegal search and seizure, was granted.

The facts are set out in the opinion of the Court of Criminal Appeals, Shipman v. State, 51 Ala.App. 80, 282 So.2d 696 [M.S. March 20, 1973], and need not be repeated here.

Briefly, the State's position is that the heroin packages were validly seized because they were in "plain view" of the officer who saw defendant Shipman shift some cellophane packages from one hand to the other hand and then conceal them in his boot top.

However, there is nothing in the opinion of the Court of Criminal Appeals to even suggest that the officer knew or had any judgment as to what the white substance was in the cellophane packages at the time of the seizure. As a matter of fact, the officer specifically testified he did not know what was in the packages, except that it appeared to be some white substance. At one point he indicated it was powder.

It is well settled that one cannot make a search legal by what it turns up. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Dennis v. State, 40 Ala.App. 182, 111 So.2d 21 (1959). Furthermore, it has been held that for plain view to justify a warrantless seizure, the incriminating character of the object must be apparent. Coolidge v. New Hampshire, 403 U.S. 443, 446, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Stanley v. Georgia, 394 U.S. 557, 569 et seq., 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (concurring opinion of J. Stewart).

In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the most recent pronouncement by the United States Supreme Court on the "plain view" doctrine, Mr. Justice Stewart, writing for a plurality of the court, stated:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an

486

intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate *only where it is immediately apparent to the police that they have evidence before them*; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Emphasis added)

The concurring opinion of Mr. Justice Stewart in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), which in the *Coolidge* opinion is cited with approval in its analysis of the plain view doctrine, is even more explicit. In *Stanley*, officers entered the defendant's dwelling with a valid search warrant specifying various gambling paraphernalia. No gambling material was found, but the officers seized several reels of film, spent some 50 minutes exhibiting them by projector, then arrested the defendant for possession of obscene film. Justice Stewart, joined by Justices Brennan and White, described the seizure of the film as "unwarranted and unconstitutional" because "[t]his is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes clear that *the contents of the films could not be determined by mere inspection*." (Emphasis added)

This principle has been recognized by commentators in the most recent writings on search and seizure. For example, in an annotation "Search and Seizure—Plain View," 29 L.Ed.2d 1067, the following comment appears: "It has been suggested that even if an object is observed in 'plain view,' *the 'plain view' doctrine will not justify*

*seizure of the object where the incriminating nature of the object is not apparent from the 'plain view' of the object.*" (Emphasis added)

An excellent analysis which pre-dates many of the cases in the area can be found in Comment, "Probable Cause to Seize and the Fourth Amendment: An Analysis," 34 Albany L.Rev. 658 (1970). This comment explores precisely the issue at bar, i. e., "the status of a seizure where the seizing officer did not know, or have probable cause to believe, that the item seized was a fruit, instrumentality, or contraband evidencing another crime." The author's conclusion is that such a seizure contravenes the Fourth Amendment.

More recent writings on the subject simply accept this principle as a settled rule. See, e. g., Kuipers, "Suspicious Objects, Probable Cause, and the Law of Search and Seizure," 21 Drake L.Rev. 252, 263 (1972); Scurlock, "Basic Principles of the Administration of Criminal Justice with Particular Reference to Missouri Law," 38 U.Mo. Kansas City 167, 198 (1970); Comment, "Search and Seizure: Probable Cause for Seizure," 7 Suffolk U.L.Rev. 184, 190 (1972); Rintamaki, "Plain View Searching," 60 Military L.Rev. 25, 39 (1973).

The Tennessee Supreme Court followed and quoted with approval from the annotation at 29 L.Ed.2d 1067 in Armour v. Totty, 486 S.W.2d 537 (1972). In that case the court held that the incriminating nature of the object in "plain view" must be apparent to the officer. The court wrote, viz:

" * * * Further, it had been previously suggested *that the incriminating nature of the object in 'plain view' must be apparent from the 'plain view' of the object.* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)."
" * * *

"Coming to the more difficult question, whether the incriminating nature of the

object in 'plain view' was apparent, it is our opinion the evidence shows this to be the case. This requirement must be likened to the standard for probable cause: a reasonable belief * * *." (Emphasis added)

Likewise, in State v. Elkins, 245 Or. 279, 422 P.2d 250 (1966), the Oregon Supreme Court reversed a conviction for possession of narcotics where the officer seized pills which he did not know to be contraband but of which he was suspicious. The court recognized that "before the officer had the right to seize the implements of a crime committed in his presence, . . . he must have *reasonable grounds to believe that the article he has discovered is contraband and therefore a crime is being committed.*" (Emphasis added) The court concluded, after a thorough review of the law of search and seizure:

"The application of the above rules of law to the facts in the present case leaves only one result. The officer had no information from which it was reasonable to assume that the pills might be contraband. The conclusion to be drawn from the evidence was that the officer was acting on suspicion. It is not enough that the officer suspects in good faith, his suspicions must be reasonable. * * *"

The conviction was reversed.

The Louisiana Supreme Court in State v. Jackson, 263 La. 849, 269 So.2d 465 (1972), in an opinion authored by Chief Justice McCaleb, also has recognized this rule that the officer must possess some judgment, based on his training and experience, i. e., reasonable or probable cause to believe that the matter in his "plain view" is contraband. That court held, viz:

"* * * it is evident that the packet seized from the defendant was admissible in evidence under the 'plain view' doctrine. If not, indeed, in 'hot pursuit,' the officers had a valid reason for the initial intrusion into defendant's privacy. He was stopped on suspicion the car he was driving had been stolen, and also in

order to issue two traffic citations. The officer 'came inadvertently across' the package. *In the light of his experience, he had reasonable and probable cause to believe the packet, in its particular shape and size, and in plain view, was contraband. * * *"* [Footnotes omitted] (Emphasis added)

The Fifth Circuit Court of Appeals in United States v. Sokolow, 450 F.2d 324 (1971), rejected a contention as to the "plain view" doctrine being applicable where there was a warrantless seizure of serial numbers from some air conditioners stored in defendant's garage which the officers entered without authority, and the officers at the time of seizure had no knowledge or indication they were contraband or stolen. Conviction of defendant was reversed.

In Commonwealth v. Hawkins, 280 N. E.2d 665 (1972), the Supreme Judicial Court of Massachusetts reached the same result, holding that officers who were searching an apartment under a valid warrant for drugs could not "seize" stolen bonds as being in "plain view" unless the officers had probable cause at the time of seizure to believe they were stolen. The court concluded that *"in almost every case in which such a seizure has been upheld * * * the officers making the seizure then knew or had probable cause to believe that the articles were stolen."* In that case, the officers did not have such probable cause. The conviction was reversed.

In United States v. Thomas, 16 U.S.C. M.A. 306, 36 C.M.R. 462 (1966), the Court of Military Appeals reversed a conviction based upon a plain view seizure for which the officer had no probable cause to believe the item seized was contraband. The court stated, viz:

"Search and seizure are separate acts. Each must satisfy the constitutional requirement of reasonableness. A search can be legal, yet the resultant seizure of property or papers discovered in the course thereof may be illegal.

"It is with the seizure of the bottle that we are here concerned, and not with any antecedent search. The Government urges that such was reasonable under the circumstances, but we must disagree. Whether a seizure is reasonable depends upon the existence of probable cause for that action. [citations omitted] *There must be facts and circumstances from which the probability of the item's contraband nature may* be *inferred*—'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [citations omitted] There is simply no basis shown on this record for any conclusion by Sergeant Lively that the seized bottle contained narcotics, or that accused was under its influence. * * *" (Emphasis added)

Finally, even the Alabama Court of Criminal Appeals has recognized this principle in reversing the conviction of a defendant for receiving and concealing stolen property in Agee v. State, 45 Ala. App. 203, 228 So.2d 30 (1969) (per Price, P. J.). The court held:

"The introduction of the evidence cannot be justified by the 'in plain view' rule set out in Kelley v. State, 39 Ala. App. 572, 105 So.2d 687. The officer had no information the articles he saw upon entering the house at the invitation of defendant's sister were stolen until he called police headquarters and no proof was adduced to show the items he saw were in fact stolen. * * *"

To like effect is the following from an opinion of the Court of Criminal Appeals in Jenkins v. State, 46 Ala.App. 719, 248 So.2d 758 (1971), (per Cates, J.):

"*To arrest or seize, the officer is required to have reasonable probability as his degree of proof.* This is more than possibility—though not proof beyond a reasonable doubt. So that, even if he had been qualified as to identifying marijuana, Townsend's identification of instant concern (thinking it was) would

not have justified an emergency seizure, e. g., from a vehicle. See Turner v. State, 43 Ala.App. 42, 179 So.2d 170." (Emphasis added)

The reason for this rule is apparent. If the rule were otherwise, an officer, acting on mere groundless suspicion, could seize anything and everything belonging to an individual which happened to be in plain view on the prospect that on further investigation some of it might prove to have been stolen or to be contraband. It would open the door to unreasonable confiscation of a person's property while a minute examination of it is made in an effort to find something criminal. Such a practice would amount to the "general exploratory search from one object to another until something incriminating at last emerges" which was condemned in Coolidge v. New Hampshire, supra. Ex post facto justification of a seizure made on mere groundless suspicion, is totally contrary to the basic tenets of the Fourth Amendment.

More importantly, the officer, if he were so justified in seizing items upon mere suspicion, could then hold the accused, as was done here, until the next day when the results of the toxicologist's report was forwarded. Such would clearly contravene the Fourth Amendment.

■ Thus, although the officer may have been justified in stopping the car, asking for the operator's license and asking an explanation of the actions of the operator and passengers under our so-called "stop and frisk law," Title 15, § 118(1), the facts of this case do not justify operation of the "plain view" doctrine. (See White v. State, 49 Ala.App. 5, 267 So.2d 802 (1972) and State v. Wilson (R.I., 1972), 297 A.2d 645.)

■ For an item in plain view to be validly seized, the officer must possess some judgment at the time that the object to be seized is contraband and that judgment must be grounded upon probable cause. The record in this cause reveals that this requirement has not been met.

We are, therefore, of the opinion that the writ is due to be quashed as having been improvidently granted.

Writ quashed.

HEFLIN, C. J., and COLEMAN, HARWOOD and FAULKNER, JJ., concur.

MERRILL, MADDOX, McCALL and JONES, JJ., dissent.

JONES, Justice (dissenting).

I admit this is a close case. My dissent is based on an interpretation of one of the "warrantless" exceptions to the search and seizure rule rather than any disagreement with the rule or its recognized exceptions. In Daniels v. State, [Ms.], April 5, 1973, 290 Ala. 316, 276 So.2d 441, Mr. Justice Bloodworth, speaking for a unanimous court, set out the "warrantless" exceptions —a total of six—one of which is enumerated as the "plain view" exception. I believe the "plain view" exception to the warrant requirement is applicable to this case.

Admittedly, a vast majority of the cases applying this doctrine have dealt with situations in which the police have a warrant to search for specific objects and in so searching come across some other article, or where the police by inadvertence come across evidence while in "hot pursuit" or "incident to arrest"; but the "plain view" doctrine has a field of operation where the police officer, though not searching for evidence, nevertheless sees an incriminating object or substance.[1]

Here an extraneous valid reason for the officer's presence existed; and, given the initial intrusion, the seizure of an object in plain view is consistent with the constitutional protection served by the warrant requirement if such seizure is based on probable cause. The existence of probable cause under the facts and circumstances of this case is, then, our point of difference.

It seems to me that the conduct of the defendant in attempting to secrete the two packages containing white powder in plain view of the police officer must be weighed in light of the total circumstances of the situation. Defendant was a passenger in the car that had just been stopped by a police officer. Immediately thereafter, almost as if by reflex action, the defendant transferred two cellophane packages from one hand to the other and then to his boot top. The officer's testimony that he did not *know* what was in the packages does not distract from the suspicious circumstances generated by the defendant's conduct.

The majority opinion stresses the point that the only testimony we have is the officer's testimony that "it was a white substance, and [he] had reason to believe it wasn't headache powder." I would submit that the witness had ample reason to believe that the white powder was contraband as opposed to headache powder because of the defendant's attempt to hide the same from the police officer immediately upon his awareness of the officer's presence. The officer had the right to assume that a substance other than contraband would not have been an object of hiding.

Under the holding of the majority, one of three alternatives necessarily obtains; (1) We will induce the enforcement officer to include in his testimonial repertoire the magic phrase "in my best judgment the substance was contraband"; (2) we will require the law officer to become an expert in the identification of illicit drugs by mere sight, smell, or taste; or (3) we will take from the law enforcement machinery the

---

1. For an excellent discussion of the "plain view" exception, see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (Part II–C) (1971).

**490**

"plain view" exception when applied to facts and circumstances such as those at bar, and thus leave the police officer to helplessly witness an apparent crime. I view neither of these alternatives as acceptable.

I would hold that probable cause existed, and that the warrantless seizure of the contraband came within the "plain view" exception and its introduction into evidence was not violative of the defendant's Fourth Amendment rights.

I would grant the writ and affirm the conviction.

MERRILL, MADDOX and McCALL, JJ., concur.