226 So.2d 169

**Clinton INGRAM**

v.

**STATE.**

**6 Div. 375.**

Court of Appeals of Alabama.

June 30, 1969.

Rehearing Denied Aug. 19, 1969.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

Fred Blanton, and Morel Montgomery, Birmingham, for appellant.

**PRICE, Presiding Judge.**

This is an appeal from a conviction for possession of marijuana, with a penitentiary sentence of five years.

A pretrial motion to suppress the evidence was interposed by defendant and was denied.

The evidence taken at the hearing on the motion to suppress is as follows:

Detectives Swindall and Hayes, attached to the gambling detail of the vice squads of the City of Birmingham, were riding in an automobile "looking for gamblers," in the 2500 Block of 18th Street, North in Birmingham, about September 2, 1967, around 7:00 o'clock in the evening. It was still daylight. They saw four persons seated at a table, with approximately four onlookers "standing around." The table was between two houses on the west side of 18th Street. The police pulled the car in between the houses, got out and walked to the table. The defendant was standing at the left front portion of the table. When the policemen approached they saw him take a package, wrapped in a paper napkin, from the left front pocket of his pants and throw it to the ground. Just prior to this, one Hudson, who was in a wheel chair with a jacket lying across him, threw the jacket to the ground. Officer Swindall picked up the jacket and asked Hudson if it was his and he said it was not. He then picked up the package and asked whose it was, but no one claimed it. He opened the package and saw that it contained marijuana. He searched the jacket and found five packs of marijuana wrapped in tin foil. He arrested defendant for possession of the one package and arrested Joseph Willie Hudson for possession of the five packets in the jacket.

Whereupon, he searched Ingram and Hudson and found on defendant a paper napkin similar to the one that was thrown to the ground.

Officer Swindall stated that it was approximately twenty to thirty feet to the table from where they parked the car; that he saw no gambling as the car pulled up and he began to get out. He said, "I couldn't testify as to what was going on except the crowd that I testified to around this table." He said he did not stop the car to make an arrest for what he saw them doing and that he did not find sufficient evidence of gambling to make an arrest for that offense; that none of the people were known to him; that he had no warrant for the arrest of any of the individuals he later learned were there; that he had no search warrant for the premises nor for any individual; that a domino game had been going on. The dominoes were still on the table and the people were sitting and standing around it.

Joseph Willie Hudson testified at the hearing on the motion that he lived with his sister at 2506 18th Street, North, Birmingham, on September 2, 1967; that he paid his sister rent for his room out of his social security check; that he knows Clinton Ingram. Witness is a cripple and unable to work. Clinton Ingram is retired from U. S. Steel Corporation, and was at the home of witness on the occasion of the arrest, "I invited him. Each day they came down, all of the old men came down there and plays dominos with me." The table where they played was in his sister's yard. Ingram was a guest, having been invited on this occasion by witness. On cross examination he stated he didn't know the location of the property lines between the houses. A photograph of the location of the houses and yard was introduced.

Clinton Ingram testified he was present on this occasion; that he was invited to play dominoes by Hudson; that he had been retired from U. S. Steel for five or six months. He denied dropping the package to the ground and also denied having a napkin in his pocket.

In denying the motion to suppress the evidence, the court stated that in the absence of a showing of Alabama law to the contrary, he was of opinion there was a legal entry on the property and that upon seeing the defendant dispose of the package the officers had the right to search and arrest him and that the finding of the marijuana on the ground did not constitute a search.

Section 154, Title 15, Code 1940, provides in pertinent part:

"An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; * * *."

In Schook v. United States, 337 F.2d 563 (8th Circuit 1964) the court said:

"Reasonable grounds for suspicion when accompanied by facts or circumstances strong enough to justify a reasonably cautious man to believe the guilt of the suspect, suffice to constitute probable cause necessary for arrest without warrant," and that a police officer who is only attempting to routinely question persons under *suspicious circumstances* to ascertain their identity and actions is executing permissible police procedure to safeguard the community against criminal activity and is not making an arrest. See also Hayes v. State, 44 Ala.App. 539, 215 So.2d 604; Maples v. State, 44 Ala. App. 491, 214 So.2d 700.

The testimony shows that if the officers had a duty to go on the premises to investigate a possible violation of law, it must have been because they had reasonable grounds for suspecting the parties were engaged in gaming.

Section 263 of Title 14, Code 1940, in pertinent part, provides:

"Any person who plays at any game with cards or dice, or any device or substitute therefor, * * * in any public house, highway, or in any other public place * * * shall, on conviction, be fined not less than twenty nor more than fifty dollars."

The act of card playing is not a vice or crime in itself. Bythwood et al. v. State, 20 Ala. 47; City of Birmingham v. Richard, 44 Ala.App. 127, 203 So.2d 692, and the statute does not prohibit gaming in a private home. Town of Boaz v. Jenkins, 32 Ala. App. 299, 25 So.2d 394; City of Birmingham v. Richard, supra.

In some of the earlier cases it was said:

"Within the meaning of Section 4792 of the Code 1896 (now Title 14, Sec. 263), a place in the yard or curtilage of a private house 40 feet away and open to observation from a public highway— so near and so open that persons traveling the highway can see card or dice playing thereat—is abstractly and per se a public place, and to be so declared by the court as matter of law." Lee v. State, 136 Ala. 31, 33 So. 894.

In Moseley v. State, 161 Ala. 74, 49 So. 807, the court said the question is, "whether or not the playing was so near the public road that parties in or traveling the same could see and tell that they were playing cards. It is not sufficient that the players were seen and could be recognized, but could persons in the road see them playing cards? * * *." See also Ford v. State, 123 Ala. 81, 26 So. 503.

From the officer's own testimony that there was no visible evidence of any unlawful behavior of any person and that he did not go on the premises to investigate suspicious activity or to make an arrest, the yard was not per se a public place under the gaming statute. His entry upon the premises, in the hope of discovering evidence to justify an arrest was without legal authority and the search could not be justified as an incident of a lawful arrest. The evidence thus obtained was violative of the constitutional rights of defendant and should have been suppressed.

It has been held that an officer may seize and use what he sees in plain view if he is lawfully where he is. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, but not if he is committing a trespass. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Knox v. State, 42 Ala.App. 578, 172 So.2d 787; Duncan v. State, 278 Ala. 145, 176 So.2d 840.

There are many cases holding that where narcotics were discarded by the accused prior to arrest after he had seen the officers it was abandoned property. Burton v. United States, 9 Cir., 272 F.2d 473, cert. denied, 362 U.S. 951, 80 S.Ct. 863, 4 L.Ed.2d 869; Vincent v. United States, 8 Cir., 337 F.2d 891; Maples v. State, supra; Hayes v. State, supra. But we are of opinion this rule, like the "in plain view" rule, should not be applied where the officer's entry on the premises is without authority or justification. The evidence concerning the package of marijuana should have been suppressed.

As an invited guest of Hudson, who resided on the premises, the defendant had "standing" to move to suppress the evidence. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

We are of opinion the trial court erred in denying the motion to suppress the evidence.

Other questions raised will not be considered. They will probably not arise in the event of another trial.

The judgment is reversed and the cause remanded.

Reversed and remanded.

ALMON, Judge (dissenting).

The Fourth Amendment of the U. S. Constitution protects people against unreasonable searches and seizures of their "persons, houses, papers, and effects."

Here, there was no search of the *person* until after appellant threw the package of marijuana to the ground and the officer ascertained its contents. I view this as an abandonment. The subsequent search of the person revealed nothing incriminating.

Neither his *house* nor his property was searched and there was no acquisition of his *papers* or *effects* except for the package of marijuana which he had previously abandoned. I see no violations of appellant's Fourth Amendment rights and, therefore, respectfully dissent.